UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY JOSEPH TALMO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 1755 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Anthony Joseph Talmo brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's ("SSA's") decision denying his application for benefits. For the reasons set forth below, the Court affirms the SSA's decision.

**Background**

Plaintiff filed an application for disability benefits on March 9, 2007, alleging a disability onset date of January 20, 2005. (R. 340, 387.) Plaintiff's application was denied initially on July 3, 2007 and on reconsideration on September 27, 2007. (R. 337-40.) An Administrative Law Judge ("ALJ") held a hearing on plaintiff's application on April 13, 2009. (*See* R. 310-36.) On May 14, 2009, the ALJ granted plaintiff's application in part. (*See* R. 345-53.) The Appeals Council denied plaintiff's request for review (R. 1-3), and plaintiff appealed to this Court.

On May 30, 2012, Judge Dow remanded the case to the SSA for further proceedings. (R. 912-30.) On July 29, 2013, and October 29, 2013, an ALJ conducted additional hearings on

plaintiff's claim. (R. 830-908.) On March 28, 2014, the ALJ issued a decision finding that plaintiff was disabled from January 20, 2005 through May 26, 2006 and became disabled again on June 15, 2012 but was not disabled from May 27, 2006 through June 14, 2012. (R. 810, 818, 820-21.) The Appeals Council declined to review the decision (R. 783-86), leaving the ALJ's March 28, 2014 as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The SSA must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past

relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the SSA to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 808.) At step two, the ALJ determined that plaintiff has the severe impairments of "degenerative disc disease of the lumbar spine, with right L4 and left S1 radiculopathy; obesity; and right eye blindness." (R. 808, 812.) At step three, the ALJ found that plaintiff's impairments medically equaled the severity of a listed impairment from January 20, 2005 through May 26, 2006 and after June 14, 2012, and thus he was disabled for those periods, but not from May 27, 2006 through June 14, 2012. (R. 810, 812, 818.) At step four, the ALJ found that from May 27, 2006 through June 14, 2012, plaintiff was unable to perform his past relevant work but had the residual functional capacity ("RFC") to perform sedentary work with certain exceptions. (R. 813, 816.) At step five, the ALJ determined that from May 27, 2006 through June 14, 2012 there were a significant number of jobs in the national economy that plaintiff could have performed, and thus he was not disabled for that period of time. (R. 817, 820)

Plaintiff argues that the ALJ erroneously found that plaintiff had the RFC to perform sedentary work during the period from May 27, 2006 through June 14, 2012. The ALJ based this conclusion primarily on the testimony of medical expert ("ME") Dr. Jilhewar, who testified that plaintiff's condition improved sufficiently during that time period to enable him to perform sedentary work with various restrictions. (*See* R. 815-16, 834-42, 846-52.) Plaintiff contends that

3

the ME's, and thus the ALJ's, conclusion ignores the report of a June 30, 2009 MRI (R. 1239-40), a June 13, 2012 treatment note (R. 1124), and the fact that the findings of consultative exams on May 2007 and December 2012 were essentially the same.[1]

The 2009 MRI report states that at L3-L4 there is "a generalized disc bulge with a shallow central protrusion that indents the thecal sac,[2] ligamentum flavum[3] thickening and facet hypertrophic degenerative changes," which result in "mild stenosis," *i.e.*, a narrowing of spaces within the spine, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited Aug. 23, 2018). (R. 1239-40.) At L4-L5, there is "loss of disc height and disc desiccation" and a "generalized disc bulge" but "no significant canal or foraminal stenosis," *i.e.*, "narrowing of the cervical disc space," https://www.spine-health.com/glossary/foraminal-stenosis (last visited Aug. 23, 2018), and the left L5 nerve root "[was] unremarkable." (R. 1240.) The doctor's overall impression was:

> 1. Evidence for previous laminectomies ("surger[ies] that create[] space by removing the . . . back part of the vertebra that covers [the] spinal canal," https://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition/prc-20009521 (last visited Aug. 23, 2018)) at L4-L5 and L5-S1 with epidural fibrosis, ("formation of scar tissue near the nerve root," https://www.spine-health.com/treatment/back-surgery/scar-tissue-and-pain-after-back-surgery (last visited Aug. 23, 2018)), but no greater than typically seen. The fibrosis on the right is encircling the descending right L5 nerve root but does not appear to displace or tether to the root.
>
> 2. Left subarticular stenosis by an asymmetric disc bulge and encroachment upon but no clear compression of the descending left S1 nerve root.
>
> 3. No MRI evidence of arachnoiditis ("a pain disorder caused by the inflammation of . . . one of the membranes that surround and protect the nerves of the spinal cord," https://my.clevelandclinic.org/health/articles/arachnoiditis (last visited Aug. 23, 2018)).

---

[1] Plaintiff also argues that a December 19, 2012 treatment note supports a finding of disability for the May 27, 2006 to June 14, 2012 period. (Pl.'s Mem., ECF 25 at 8.) That note, however, post-dates the relevant period and does not suggest that the observations in it apply retroactively. (*See* R. 1117.)

[2] The thecal sac is the "enclosing case" of the spinal cord." thecal, *Dorland's Illustrated Medical Dictionary* (32d ed).

[3] Ligamentum flavum is a spinal ligament. ligamenta flava, *Dorland's Illustrated Medical Dictionary* (32d ed).

4

    4.    Mild spinal stenosis at L3-L4 as detailed.

(*Id.*) These findings do not show that a nerve root is compromised, and thus do not meet the listing for disorders of the spine. *See* Listing 1.04 ("Disorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord."), *available at* https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm (last visited Aug. 23, 2018). Moreover, plaintiff does not explain how these findings, which the doctor characterized as mild, undermine the ME's testimony that plaintiff was capable of performing sedentary work.

    Plaintiff's reliance on a treatment note from June 13, 2012 is similarly misplaced. The note indicates that plaintiff sought medical treatment because he had a "severe exacerbation of pain," and that he would receive an epidural steroid injection the next day. (R. 1124-25.) The next day was June 14, 2012, the day the ME said plaintiff's disability resumed. This note therefore supports the ME's testimony about the start date of plaintiff's second period of disability but does not suggest that plaintiff was disabled during the May 27, 2006 to June 14, 2012 period.

    Plaintiff's last argument is that the results of the two consultative exams ("CEs") on May 2007 and December 2012 are essentially the same, and thus the conclusion that plaintiff was disabled in 2012 should apply equally to the earlier period. Though the narratives of the two CE reports are similar (*see* R. 749-53, 1093-96), the 2012 CE includes specific findings about plaintiff's ability (and lack thereof) to perform work-related activities (*see* R. 1097-1102), findings that are absent from the May 2007 CE (*see* 749-53). Further, there is contemporaneous evidence from plaintiff's treaters that supports the findings of the 2012 CE (*see, e.g.*, R. 1117-22, 1108-12, 1134-35, 1183-89, 1257-59), but no such evidence for the 2007 CE.

In short, there is substantial support in the record for the ALJ's conclusion that plaintiff was not disabled during the period May 27, 2006 through June 14, 2012. Accordingly, there is no basis for reversing the SSA's decision.

## Conclusion

For the reasons set forth above, the Court denies plaintiff's motion for summary judgment [24], grants the SSA's motion for summary judgment [32], and affirms the decision of the SSA. This case is terminated.

**SO ORDERED.**                                   **ENTERED:  August 23, 2018**


_____
**M. David Weisman**
**United States Magistrate Judge**